[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IC

**RECEIVED**

DEC 08 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Nina Watts, individually
and on behalf of all
others similarly situated,

Pro Se Plaintiff

v.

Perella Weinberg Partners
LP; Joseph R. Perella;
Peter A. Weinberg;
Flagship Credit
Acceptance LLC, et al;

Defendant

**United States District Court**
**Northern District of Illinois**
**Eastern Division**

**Jury Trial: DEMANDED**

1:25-cv-14855
Judge Thomas M. Durkin
Magistrate Judge Laura K. McNally
RANDOM/Cv Cat 2

## CLASS ACTION
## COMPLAINT

Nina Watts, individually, proceeding Pro Se, on behalf of herself and on behalf of others

similarly situated, for her complaint, states and alleges as follows:

### INTRODUCTION

1. "The gravest injustice is often committed in plain sight and hidden in fine print.
   As the Supreme Court has reaffirmed, the principle that 'no man shall profit from
   his own wrong' remains a foundational standard of equity. *"Riggs v. Palmer*, 115
   N.Y. 506, 22 N.E. 188 (1889). Plaintiff brings this class action to expose a
   deliberate and systemic pattern of unfair, deceptive, and abusive practices
   orchestrated by Defendant Flagship Credit Acceptance

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

LLC ("Flagship") and its parent, Perella Weinberg Partners Capital Management LP. Defendants have devised and executed a scheme that targets Illinois consumers through a calculated barrage of phantom account entries, unauthorized debits, sham "payment arrangements" which are later ignored, repeated harassing collection calls, and unlawful repossessions carried out without proper notice or legal justification for profit.

2. This is not a case of isolated missteps or administrative errors. The practices challenged herein are institutional and widespread reflected in hundreds of consumer complaints lodged with the Better Business Bureau and Consumer Financial Protection Bureau, echoed in class action settlements, and corroborated by social media groups dedicated to cataloging Flagship's misconduct. Defendants' conduct is not only a breach of contract and public policy but a direct affront to the statutory protections Illinois and federal law afford to consumers in the marketplace.

3. At the core of Illinois and federal consumer-protection law lies an unyielding duty of fairness and transparency. The implied covenant of good faith and fair dealing — binding on finance companies and implicit in every auto-loan arrangement — requires that creditors honor payment plans, properly credit payments, provide accurate accounting, and treat borrowers with honesty and respect. (See *Crown Mortgage Co. v. Young*, 2018 IL App (1st) 162882, ¶ 21.) Failure to do so violates not just contract law, but the powerful undergirding purpose of statutes designed to defend consumers' rights.

4. This is more than a breach of contract. It is a breach of trust. It violates not only the covenant of good faith and fair dealing, but also the laws enacted to protect

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

consumers—including the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), the Fair Debt Collection Practices Act (FDCPA), the Truth in Lending Act (TILA), the Electronic Fund Transfer Act (EFTA), the Fair Credit Reporting Act (FCRA), the Telephone Consumer Protection Act (TCPA), the Unfair, Deceptive, or Abusive Acts or Practices provision (UDAAP), 15 U.S.C. § 45, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. These statutes are not mere formalities; they are bulwarks enacted to ensure honesty, equity, and fair dealing in financial transactions and to deter precisely the kind of systemic abuse, manipulation, and organized misconduct perpetrated by Defendants.

5. Through these deceptive and abusive acts, Defendants have caused substantial and ongoing injury to Plaintiff and similarly situated Illinois consumers, depriving them of the benefits of their contracts and the protections afforded by law. The conduct described is not isolated but rather reflects a consistent business practice designed to maximize profit at the expense of borrowers' statutory and contractual rights.

6. Flagship's conduct — deleting scheduled payments entered by consumers, imposing unauthorized debits, engaging in daily harassing calls, and executing unlawful repossessions — represents a textbook violation of that equitable principle. This lawsuit seeks to hold them to account, restore borrowers' rights and financial integrity, and ensure that in Illinois's auto-finance marketplace, fairness, transparency, and consumer dignity are more than empty promises.

7. Plaintiff seeks certification of an Illinois class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), declaratory and injunctive relief, statutory, actual, and punitive

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

damages, restitution, disgorgement, and such other relief as the Court deems just and proper.

## Jurisdiction And Venue

8. This Court has original subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as this action is brought as a class action, the proposed class consists of at least 100 members, the aggregate amount in controversy exceeds $5 million, and at least one member of the class (Plaintiff) is a citizen of a state (Illinois) different from Defendants.

9. This Court also has federal question jurisdiction under 28 U.S.C. § 1331, as Plaintiff asserts claims under federal statutes, including the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq.; Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; 99; Unfair Deceptive Acts and Practices (UDAP) statute, 15 U.S.C. § 45. and Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. The aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, given the number of affected Illinois consumers, the scope of unlawful interest fees, unauthorized debits, repossessions, negative credit reporting, and other damages suffered by Plaintiff and the class.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to Plaintiff's claims occurred in this District, and because Defendants regularly conduct business in this District.

13. This Court has personal jurisdiction over Defendants because they conduct substantial, continuous, and systematic business in the State of Illinois, including marketing, originating, servicing, collecting, and repossessing auto loans from Illinois residents, including Plaintiff and the proposed class.

14. Defendants are further alleged to have implemented, directed, and enforced the unlawful acts, omissions, and consumer harm at issue within this judicial district, including but not limited to:

   a) Entering into and servicing auto finance contracts with Illinois consumers;

   b) Initiating unauthorized electronic debits and phantom charges;

   c) Conducting repossession activities and negative credit reporting;

   d) Failing to properly disclose, credit, and apply consumer payments as required by contract and law.

15. The Court has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and all other applicable law.

## PARTIES

16. Plaintiff Nina Watts is an adult individual residing in Lockport, Will County, Illinois, and is a citizen of the State of Illinois.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

17. Defendant Flagship Credit Acceptance LLC ("Flagship") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 3 Christy Drive, Suite 201, Chadds Ford, Pennsylvania 19317. Flagship is registered to do business in Illinois, and its registered agent for process service in Illinois is Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703 and 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

18. Defendant Flagship Credit Acceptance LLC ("Flagship") is a nationally licensed, full-service specialty finance lender that provides financial options for non- prime auto shoppers, known for targeting those with compromised credit for their primary source of transportation. Flagship originated more than $16 billion in auto loans and employs over 500 people nationwide.

19. Defendant Joseph R. Perella and Peter A. Weinberg are, upon information and belief, managing members, partners, or officers of the foregoing entities, and may be served via the registered agent listed

20. Perella Weinberg Partners Capital Management LP is a corporation in New York, New York registered with the Colorado Department of State (CDOS). The entity was formed on July 29, 2009, in the jurisdiction of Delaware. The registered office location is at 251 Little Falls Drive, Wilmington, New Castle County, Delaware 19808. The registered agent of the entity is Corporation Service Company. The registered agent's office address is 1900 W Littleton Blvd, Littleton, CO 80120.

21. At all relevant times, Defendant Joseph R. Perella and Peter A. Weinberg, Flagship Credit Acceptance LLC, (ICP) and Perella Weinberg Partners Capital Management LP operated as alter egos, joint venturers, partners, and agents of each other, and

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

each acted within the scope of such relationship for the other's benefit and with the other's consent.

## STATEMENT OF FACTS

**Flagship's Enterprise Conduct**

22. Flagship and its affiliates orchestrate a coordinated scheme to maximize profit through unfair, deceptive, abusive, and unlawful means. These include:

**a) Orchestrating fraudulent payment arrangements and manufacturing delinquency**

Defendants accept consumer payments under agreed-upon payment arrangements, then deliberately fail to honor those arrangements—falsely coding accounts as delinquent, misrepresenting balances, and leveraging the false delinquency to extract additional payments, accelerate the account, and initiate repossession activity.

- Violated Laws: RICO, FDCPA, ICFA,
- Case Law: McMillan v. Collection Professionals Inc., 455 F.3d 754 (7th Cir. 2006); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)b)

b) **Deleting scheduled payments entered by consumers to fabricate delinquency**

Defendants intentionally delete scheduled payments that consumers personally enter into the online portal, without notice, justification, or recourse, creating an artificial state of delinquency that is then used to charge fees, increase interest, threaten repossession, and justify negative credit reporting.

- *Violated Laws*: RICO, FDCPA, TILA, ICFA

- *Case Law*: *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991 (7th Cir. 2003)

**c) Running a harassment and intimidation operation through daily collection calls**

Defendants place repeated, aggressive collection calls (documented in attached call logs), using automated systems and multiple agents—even where payment arrangements are current.

- *Violated Laws*: RICO, FDCPA, TCPA, ICFA

- *Case Law*: *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014)

d) Imposing fictitious charges and unauthorized debits ("phantom accounting scheme")

Defendants routinely add unexplained charges, interest adjustments, duplicative debits, and "phantom" ledger entries, many exceeding $6,000, without lawful basis or disclosure.

- *Violated Laws*: RICO, FDCPA, TILA, EFTA, ICFA, UDAAP

- *Case Law*: *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010)

**e) Attempting unlawful, unauthorized withdrawals to extort payments**

Defendants attempt large ACH withdrawals from customer bank accounts without valid authorization, causing overdrafts and repeated fees.

- *Violated Laws*: RICO, EFTA, FDCPA, ICFA

- *Case Law*: *Campbell v. Hope Cmty. Credit Union*, 2012 WL 2395194 (W.D. Tenn.)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**f) Using repossession and credit reporting as tools of coercion and enterprise control**

Vehicles are repossessed without lawful notice, while payment plans are active or after payments are made, and false derogatory credit information is furnished to credit bureaus to pressure and punish borrowers.

- *Violated Laws*: RICO, FDCPA, FCRA, ICFA, UDAAP
- *Case Law*: *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004)

### CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action under Fed. R. Civ. P. 23(b)(2) and (b)(3), for herself and all others similarly situated, defined as:

    a) Illinois Class: "All natural persons residing in Illinois, from January 1, 2022, to the present, who made or attempted to make a payment arrangement with Flagship, tendered payment under such arrangement, and were nevertheless subjected to further collection activity, repossession threats, phantom ledger entries, unauthorized debits, or repossession."

24. Numerosity: Hundreds of BBB complaints, plus public records, show that joinder is impracticable.

25. Commonality: Common questions include whether Flagship:

    (a) honored payment arrangements;

    (b) misrepresented accounts to induce payment;

    (c) pursued unlawful collection, false charges, and unauthorized

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

debits;

    (d) followed proper repossession notice procedures;

    (e) violated consumer protection statutes.

26. Typicality: Plaintiff's claims are typical—she entered payment arrangements, Flagship took her money, fabricated account debits, made harassing calls, and repossessed her vehicle without legal notice.

27. Adequacy: Plaintiff will fairly and adequately represent the class, proceeding pro se. Legal issues are common to all class members.

28. Predominance/Superiority: Common questions predominate; class action is superior to hundreds of individual suits.

### I. Background

29. Plaintiff financed a 2017 Jeep Wrangler through Flagship Credit Acceptance.

30. Flagship's business practices include:

    (a) Inducing customers into "payment arrangements" to cure or postpone loan defaults;

    (b) Accepting payments under those arrangements, but then immediately pursuing repossession and daily harassing collection calls without honoring the agreements;

    (c) Manipulating customer ledgers with false charges and unauthorized withdrawals

31. In the fall of 2024, Plaintiff was facing some financial hardship due to homelessness. Plaintiff negotiated payment arrangements, including:

    a) On or around April 11, 2025, Plaintiff scheduled a payment of $5,383.46 for April 30, 2025, to cover all past and current payments. On April 11,

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

2025, at 12:16pm this April payment was deleted from Watts' account ledger.

b) Flagship agent Ken called and said to keep my car from been repossessed I needed to pay $945.00 dollars today.

c) On or around April 11, 2025, Plaintiff and Flagship agent Ken entered a payment arrangement ($945.00, cleared April 15).

d) Despite compliance, Flagship's agents (Ken, Latasha, Kimmie, Maria, Ginger, Ms. Ruffin) called repeatedly (from 866-520-4437, 877-201-33XX, 800-327-8543, 844-762-2875, 800-900-5150, etc.)—up to 6 times a week—leaving "imperative you call today" messages.

e) Plaintiff received urgent repo threats and was told "nothing is in the notes" and "the person you spoke with doesn't work here."

32. On or around June 3, 2025: The Plaintiff sent the defendant a payment of $ 6,790.00 via check number 183. This payment covered all past due payments and included June payment. However, Flagship never presented the check 183 to the Plaintiff's bank for payment until September 2025.

33. On or around June 10, 2025: Flagship inserted two –$6,790.00 debits in Plaintiff's ledger, then added duplicate "interest not collected" charges of $6,243.21 and $6,292.46—without disclosure, explanation, or legal basis.

34. On or around September 12, 2025: A new debit of $2,095.68 posted, with an "interest not collected" entry of $4,073.65.

35. On or around September 15, 2025: Flagship again added and reversed $6,790 entries, plus another "interest not collected" entry of $6,243.21.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

36. These fabricated transactions inflated Plaintiff's account balance by over $20,000 in less than 90 days.

37. Plaintiff has documentary proof that the June 10 payment check was never submitted, until September 2025.

38. On or around September 11, 2025, Plaintiff paid $2,100 per a new payment arrangement (with Kimmie's team) to bring her account current for July/August; September payment of $1,047 was due 9/25/2025.

39. Despite paying as agreed, on September 15, 2025, Flagship attempted an unauthorized ACH withdrawal of $6,790 from Plaintiff's checking account without consent, causing overdraft, fees, and hardship—violating EFTA, 15 U.S.C. § 1693e(a).

40. When Plaintiff protested and stated that she entered a payment arrangement and made a $2,100.00 dollar payment. Flagship's agents said there was "no record" of the payment plan and demanded $8,639.82 or a new arrangement.

41. Plaintiff received a bill for $8,639.82, due October 25, 2025, while her account continued to reflect phantom and reversed charges. There were no details attached to the bill.

42. Defendant never sent the Plaintiff a detailed financial audit on the plaintiff account ledger detailing the charges added to the account ledger.

43. On October 20. 2025 at 7:39 pm, Flagship agent sent plaintiff an email stating that "Flagship Credit Acceptance has special programs to assist customers facing short term hardships or unforeseen circumstances. If you would like to inquire about one of these programs, please contact a Flagship account manager today to

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

discuss your situation." However, Flagship has failed to provide an accurate audit and explanation of charges add and payment arrangements accuracy.

44. On November 21, 2025, without prior written notice, Flagship repossessed the 2017 Jeep Wrangler, violating Illinois law and the payment arrangement agreement.

45. On December 1, 2025, Plaintiff received a certified letter from Northwest Repossession.

## II. Public Complaints and Systemic Pattern

46. BBB (Better Business Bureau) and CFPB records reflect over 500 Illinois consumer complaints since 2022, documenting the same misconduct:

      (a) payment plans ignored;

      (b) daily calls, harassment, threats;

      (c) phantom/duplicate account entries;

      (d) unauthorized debits;

      (e) unlawful repossessions.

47. Class action settlements have been reached with Flagship for unauthorized auto-dialed calls (TCPA), and legal claims are pending for deceptive collection, improper repossession, and consumer fraud.

48. Social media groups and consumer websites are filled with Illinois residents describing identical schemes.

## III. Flagship's Repossession Policy (On Information and Belief)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

49. Flagships, publicly stated policies and consumer-facing disclosures, represent that customers will receive timely written notice of default and a meaningful opportunity to cure any delinquency prior to repossession, in compliance with state and federal law as well as standard industry practices.

50. These policies are intended to provide consumers with due process, fair warning, and a final chance to protect their vehicle and credit. However, Flagship routinely disregards its own procedures. Customers, including Plaintiff and members of the proposed class, often receive no valid written notice before repossession actions are initiated, even after making payments or while actively participating in an approved payment plan.

51. Instead of honoring the opportunity to cure, Flagship has repossessed vehicles after accepting payments, during ongoing negotiations, or without any communication at all, depriving borrowers of their contractual and statutory rights.

52. This systematic failure to provide notice and opportunity to cure constitutes both a breach of contract and a violation of fundamental consumer protections, compounding the harm to vulnerable borrowers and stripping them of property, transportation, and economic stability without legal justification.

## IV. PLAINTIFF'S EXPERIENCES

**Nina Watts**

53. Nina Watts, the plaintiff, financed a 2017 Jeep Wrangler through Flagship Credit Acceptance, in or around August 2022 believing she would be treated fairly and in accordance with consumer protection law.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

54. In December 2024, Watts was offered to refinance her auto loan as part of the hardship program options. This program would allow Watts to apply for a lower interest rate, especially since her credit score had improved, which in term would lowered the monthly payments. So, Watts allowed the agent to submit the application. When watts called to check on the status of the application Watts was informed that the first agent did not properly submit it. However, the agent stated "they can submit it during the call.

55. On December 24, 2024, Watts received an email that her hardship application was disapproved, but once the account is current Watts could change her due date.

56. Throughout 2024 and 2025, Watts complied with Flagship's payment arrangements, tendered substantial payments, sometimes making two payments in 30 days, and relied on repeated assurances from Flagship agents—including Ken, Jose, Kim, Kelly, and Maria—that her account would be brought current and her vehicle would not be repossessed if she complied with their instructions.

57. Despite her efforts, Watts was subjected to a relentless and harassing campaign of daily collection calls from Flagship's agents, often multiple times per day, even after she had satisfied the terms of her payment arrangements and while her account was current. These calls frequently marked "urgent" or "imperative you call today," caused Watts severe stress and disruption.

58. A partial log of Flagship's harassing and repetitive collection contacts—made despite Plaintiff's payment arrangements and requests for reliefs set forth below. These calls often occurred multiple times per week, at various hours, and persisted even after payment was accepted, with Flagship agents using different phone numbers and, at times, leaving urgent or misleading messages:

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

| Date | Time |
|------|------|
| 08/26/2025 | 9:25 AM |
| 08/27/2025 | 8:19 PM |
| 08/28/2025 | 3:42 PM |
| 08/28/2025 | 9:43 AM |
| 09/03/2025 | 10:56 AM |
| 09/05/2025 | 10:18 AM |
| 09/10/2025 | 8:43 AM |
| 09/12/2025 | 9:04 AM |
| 09/17/2025 | 12:01 PM |
| 09/18/2025 | 9:28 AM |
| 09/22/2025 | 4:57 PM |
| 09/24/2025 | 8:24 AM |
| 09/24/2025 | 9:55 AM |
| 09/25/2025 | 8:15 AM |
| 09/25/2025 | 10:15 AM |
| 09/25/2025 | 11:51 AM |
| 09/26/2025 | 8:21 AM |
| 09/26/2025 | 2:42 PM |
| 09/26/2025 | 5:11 PM |
| 09/29/2025 | 11:31 AM |

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

|  | Date | Time |
|---|---|---|
| | 09/29/2025 | 12:29 PM |
| | 09/29/2025 | 12:43 PM |

59. This partial log demonstrates a persistent and escalating pattern of collection activity, after agreement was entered and payment received with calls often coming multiple times in a single day, in direct violation of Plaintiff's rights under state and federal law. The frequency, timing, and duplicity of these contacts caused Plaintiff significant distress, further illustrating Defendants' disregard for the protections afforded by the FDCPA and other statutes.

60. These calls originated from at least four different Flagship numbers, including 844-762-2875, 877-201-1333, 800-900-5150, and 800-327-8543, and included direct contact from agents Kim, Kelly, and Maria. Despite being told her account would be brought current with a payment of $2,100 on September 11, 2025, Watts was repeatedly told conflicting information, including that "no payment arrangement is in the system" or that she would need to pay $8,639.82 to stop repossession.

61. Flagship manipulated Watts' account ledger, inserting phantom debits, interest charges, and unauthorized withdrawal attempts—including a $6,790 ACH debit without consent on September 15, 2025—which caused her bank account to be overdrawn and created further financial hardship.

62. Despite Plaintiff's requests for an audit, copies of recorded calls, and written confirmation of her account status, Flagship failed to provide adequate responses, continued collection activities, and ultimately proceeded to repossess her vehicle.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

63. On November 21, 2025, Flagship repossessed Watts' 2017 Jeep Wrangler without any required written notice of default, opportunity to cure, or legal justification. This wrongful repossession occurred while her account was in active dispute, with payments made as agreed and all alleged arrears deferred by arrangement.

64. As a direct result of Flagship's conduct, Watts suffered loss of her primary vehicle, severe

65. emotional distress, damage to her credit, and incurred significant financial penalties, all while being subjected to harassing and duplicative collection tactics.

66. Plaintiff's experience is not isolated. Public records, BBB and CFPB complaints, and a growing body of class action litigation confirm that Flagship employs these aggressive and deceptive practices against hundreds of Illinois consumers, as detailed in the preceding and following sections of this Complaint.

## V. NUMEROUS CUSTOMERS NATIONWIDE COMPLAIN

67. Nina Watts, the plaintiff, is not alone in her experience with the defendants, Flagship Credit Acceptance LLC. Across the country, numerous customers have lodged complaints against Flagship through social media, the Better Business Bureau, and court litigation, regarding issues such as failure to honor payment arrangements, failure to provide adequate notice of repossession, mismanagement of customer accounts, improper stacking of fees and phantom charges, unauthorized debits, abusive collection practices, and failure to maintain accurate loan records.

68. Flagship was initially accredited by the Better Business Bureau[1] in August 2010, but its accreditation was revoked in 2022 amid a surge of consumer complaints,

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

though it has since been reinstated. The Better Business Bureau's customer review page, however, continues to be flooded with a litany of complaints, over 750 complaints closed in the last 3 years and over 220 complaints closed in the last 12 months.

69. For example, the Better Business Bureau contains the following recent complaints:

70. *"This company is a scam, and they wrongfully report repossessions on your credit as if you are a faulty customer. They refuse to process payments, then send your file to repossession, even when you have proof you paid. They need to refund all their customers and be shut down."* (WalletHub, November 2024)

71. *"Flagship continually harassed me with calls, threatened repossession even after payments were made, and never responded to written disputes. Their accounting is a mess—phantom charges appeared every month, and they ignored every request for an audit."* (BBB Complaint, April 2024)

72. *"Despite being in an agreed payment plan, Flagship repossessed my car without any notice. I had paid what they asked, but they claimed I never made the payment. The stress and financial loss have been overwhelming."* (BBB Complaint, January 2024)

73. Additionally, private Facebook groups such as "Flagship Credit Acceptance Class Action" and "Flagship Credit Complaints" contain thousands of posts and hundreds of members, all describing similar experiences—phantom charges, harassment, unauthorized debits, wrongful repossession, and lack of due process.

74. Flagship's predatory conduct is the subject of multiple lawsuits and class actions across the United States, including claims for violations of the Fair Debt

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Collection Practices Act (FDCPA), the Telephone Consumer Protection Act
(TCPA), state consumer protection statutes, and breach of contract.

75. The experiences of Plaintiff Watts are not isolated, but rather part of a broad,
systemic pattern of abusive, deceptive, and illegal practices directed at vulnerable
auto finance consumers in Illinois and nationwide.

## CLASS ACTION ALLEGATIONS

76. The Plaintiff brings this action on behalf of herself, and all others similarly
situated ("the Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and
(b)(3). The Plaintiff's experiences, as detailed in the preceding sections, are
representative of the broader pattern of the defendant's exploitative and abusive
practices towards vulnerable consumers across Illinois.

77. The proposed Class is defined as:

All persons who, from January 1, 2022 to the present, have entered into auto
finance agreements, payment arrangements, or related financial transactions with
Flagship Credit Acceptance LLC in the State of Illinois, and who have suffered
unauthorized debits, phantom ledger charges, harassing collection activity, or
repossession contrary to the terms of their agreements.

78. The requirements for class certification under Rule 23 are met as follows:

a) Numerosity: The members of the Class are so numerous that joinder is
impracticable. Based on public records, BBB complaints, and
Plaintiff's information and belief, hundreds of persons in Illinois have
been affected.

b) Commonality: There are common questions of law and fact, including:

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

> i. Whether Flagship has engaged in unfair, deceptive, or abusive practices under federal and Illinois law;
>
> ii. Whether Flagship has failed to honor payment arrangements or manipulated consumer accounts;
>
> iii. Whether Flagship has imposed unauthorized debits, phantom charges, or wrongful repossession;
>
> iv. Whether Flagship's actions violate the UDAP/FTC Act, FDCPA, RICO, EFTA, TILA, FCRA, and Illinois law;
>
> v. Whether the class has suffered damages as a result.
>
> c) Typicality: The claims of the Plaintiff are typical of the claims of the members of the Class, who have been subjected to similar patterns of conduct by the defendant.
>
> d) Adequacy: The Plaintiff will fairly and adequately represent the Class and is willing to proceed pro se if necessary. She has no conflict with other members and seeks redress for all similarly affected.

79. The requirements of Rule 23(b)(2) are met, as Plaintiff seeks injunctive and declaratory relief to address Flagship's ongoing unlawful conduct.

80. The requirements of Rule 23(b)(3) are also met, as common questions predominate over any individual issues, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

81. The Plaintiff's claims arise under various federal and state laws, including the Federal Trade Commission Act (UDAP), the Fair Debt Collection Practices Act (FDCPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), the Electronic Fund Transfer Act (EFTA), the Fair Credit Reporting Act (FCRA), the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Telephone Consumer Protection Act (TCPA), the Truth in Lending Act (TILA), and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA).

82. The defendant's conduct, as exemplified by Watts and the numerous complaints from other Illinois consumers, reflects a systemic and organized effort to defraud and abuse consumers, causing substantial distress and financial harm for countless individuals and families.

## CLAIMS FOR RELIEF

## Count I: Violations of the Unfair and Deceptive Acts and Practices (UDAP) Statute, 15 U.S.C. § 45

83. Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

84. The Unfair and Deceptive Acts and Practices (UDAP) statute, 15 U.S.C. § 45, states: "It is unlawful for any provider of consumer financial products or services or a service provider to engage in any unfair, deceptive, or abusive act or practice."

85. Defendant Flagship Credit Acceptance LLC's conduct, as exemplified by the experiences of Plaintiff Nina Watts and the numerous complaints from other Illinois consumers, constitutes multiple violations of the UDAP statute, 15 U.S.C. § 45. Flagship has engaged in unfair, deceptive, and abusive practices in the origination, servicing, collection, and enforcement of auto finance agreements, which have caused significant financial harm and distress to the Plaintiff and other class members.

86. Specifically, Flagship has:

    i. Misrepresented the status and terms of auto loan accounts, including by

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

promising that payment arrangements would prevent repossession, while nevertheless initiating or threatening repossession, and repeatedly claiming payments were not received or not sufficient even when accounts were current by agreement.

ii. Imposed a web of undisclosed, excessive, and unauthorized charges, such as phantom ledger entries, "interest not collected" fees, duplicative debits and credits, and unapproved withdrawals from consumer accounts—all without clear disclosure, documentation, or consent.

iii. Diverted consumer payments to cover fabricated or inflated charges rather than applying funds to the contractual loan balance, then threatening or carrying out repossession and negative credit reporting based on alleged non-payment.

iv. Failed to provide timely and accurate accountings, payoff information, or written notice of alleged default and opportunity to cure, contrary to statutory and contractual requirements, and ignored consumer disputes, audit requests, and evidence.

v. Obstructed consumers' efforts to resolve or dispute account errors by routing customers between multiple departments, providing conflicting or misleading explanations, and refusing to acknowledge payment arrangements, audit history, or supporting documentation.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

87. Flagship's unfair, deceptive, and abusive practices have caused significant financial harm, credit damage, vehicle loss, and emotional distress to the Plaintiff and other class members, in direct violation of the UDAP statute.

88. Supporting Case Law:

- *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972) (scope of "unfair" acts under FTC Act);

- *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015) (systemic business practices and consumer harm);

- *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) (liability for abusive and deceptive conduct affecting consumers).

**Count II: Violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.**

89. Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

90. The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., prohibits debt collectors from engaging in abusive, deceptive, or unfair debt collection practices.

91. Defendant Flagship Credit Acceptance LLC, in connection with the servicing and collection of Plaintiff's and class members' auto finance accounts, engaged in multiple violations of the FDCPA, including but not limited to:

i. Harassing Plaintiff and class members with repeated, excessive collection calls—often multiple times daily—even after Flagship accepted payment arrangements or received the agreed payments, in violation of 15 U.S.C. § 1692d (harassment/abuse).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

ii. Using false, deceptive, or misleading representations regarding the status of accounts, such as:

- Falsely stating that payment arrangements "do not exist" in their records,
- Misstating or denying receipt of payments,
- Threatening imminent repossession despite current arrangements or cleared payments—all in violation of 15 U.S.C. § 1692e.

iii. Fabricating, inflating, or misapplying charges and fees, then demanding immediate payment under threat of repossession, without any contractual or legal basis, in violation of 15 U.S.C. § 1692f (unfair practices).

92. As a result of Defendant's willful and repeated FDCPA violations, Plaintiff and the class suffered emotional distress, credit damage, financial loss, and were deprived of the protections Congress intended for consumers.

93. Supporting Case Law:

- *McMillan v. Collection Professionals Inc.*, 455 F.3d 754 (7th Cir. 2006) (harassment by repeated calls actionable under FDCPA)
- *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991 (7th Cir. 2003) (false representation of debt status violates §1692e)
- *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007) (deceptive and misleading debt collection actionable)

**Count III: Violation of the Illinois Consumer Fraud and Deceptive Business**

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**Practices Act (ICFA), 815 ILCS 505/2**

94. Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

95. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, prohibits the use of unfair or deceptive acts or practices in connection with any trade or commerce.

96. Defendant Flagship engaged in a pervasive pattern of unfair and deceptive conduct, including:

> i. Misrepresenting the terms and status of payment arrangements—leading consumers to believe that accounts were current and repossession would be prevented, only to renege and proceed with collection and repossession efforts.

> ii. Concealing or failing to adequately disclose unauthorized debits, phantom fees, fabricated ledger entries, and unjustified "interest not collected" charges—leaving consumers unable to determine their true account status.

> iii. Failing to provide legally required notice and opportunity to cure before repossessing vehicles, in direct violation of both statutory and contractual obligations.

> iv. Engaging in misleading, oppressive, and retaliatory conduct designed to coerce payment and deprive consumers of the benefit of their agreements.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

97. Defendants' acts offend public policy, are immoral, unethical, oppressive, and

have caused substantial injury to Plaintiff and class members.

98. Supporting Case Law:

- *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005)

  (defining unfair and deceptive practices)

- *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (2002) (scope

  and remedies under ICFA)

**Count IV: Violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.**

99. Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

100.        The Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z

require clear, accurate, and timely disclosure of finance charges, account

balances, payoff amounts, and payment application.

101.        Defendant Flagship violated TILA by:

i. Failing to provide accurate and timely payoff statements, balances, and

finance charge disclosures to Plaintiff and class members, preventing them

from ascertaining their true obligations.

ii. Misrepresenting and misapplying payments—crediting funds to

fabricated or inflated fees and phantom charges rather than principal or

contractual balances.

iii. Obscuring the true cost of credit and the impact of additional charges

or account manipulations through ambiguous or misleading statements.

102.    As a result, Plaintiff and the class were denied the full, fair disclosure of material account terms, suffered financial loss, and lost vehicles through wrongful repossession.

103.    Supporting Case Law:

- *Rodriguez v. Midwest Premium Servs., Inc.*, 144 F.3d 677 (10th Cir. 1998)

- *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176 (S.D. Tex. 2007)

**Count V: Violation of the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 et seq.**

104.    Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

105.    The Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., prohibits unauthorized electronic debits from consumer accounts without prior written consent and clear notice.

106.    Defendant Flagship repeatedly violated EFTA by:

i. Initiating unauthorized ACH debits from Plaintiff's and class members' bank accounts, including but not limited to the $6,790.00 attempted debit on September 15, 2025, without proper authorization or notice.

ii. Causing overdrafts, returned-item fees, and significant financial hardship through these unauthorized transfers.

iii. Failing to investigate or correct disputed electronic fund

transfers, despite repeated consumer complaints and evidence.

107.    Plaintiff and class members suffered actual financial harm and lost

confidence in the security of their bank accounts as a result of Flagship's actions.

108.    Supporting Case Law:

- *Campbell v. Hope Cmty. Credit Union*, 2012 WL 2395194
  (W.D. Tenn. June 25, 2012)

- *Johnson v. JPMorgan Chase Bank, N.A.*, 2013 WL 3828845
  (N.D. Ill. July 24, 2013)

**Count VI: Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.**

109.    Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

110.    The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., requires

furnishers to report accurate information to credit bureaus and conduct reasonable

investigations of consumer disputes.

111.    Defendant Flagship knowingly violated FCRA by:

i. Reporting false and adverse information to credit bureaus,

including false delinquency, inflated balances, and wrongful

repossession, while payment arrangements or disputes were

pending.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

ii. Failing to investigate and correct consumer disputes regarding false credit reporting, despite receiving notice from Plaintiff and class members.

iii. Engaging in willful and reckless disregard for the truth and consumer rights, causing lasting credit damage.

112.     Plaintiff and class members' creditworthiness was unlawfully harmed as a result.

113.     Supporting Case Law:

- *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010)
- *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004)

**Count VII: Violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227**

114.     Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

115.     The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits using automated dialing systems or prerecorded messages to contact consumers without prior express consent.

116.     Defendant Flagship violated the TCPA by:

i. Repeatedly placing automated calls and prerecorded messages to Plaintiff's and class members' phones—often daily and from multiple numbers—without valid consent, even after payment arrangements.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

ii. Using such tactics as part of a campaign of harassment, coercion, and intimidation to extract payments or pressure consumers into new agreements.

117.    Plaintiff and class members suffered invasion of privacy, disruption, and emotional distress as a result.

118.    Supporting Case Law:

- *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014)

- *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765 (N.D. Ill. 2014)

**Count VIII: Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962**

119.    Plaintiff re-alleges and incorporates all prior paragraphs of this complaint.

120.    The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, prohibits patterns of racketeering activity conducted through an enterprise.

121.    Defendant Flagship, as part of an ongoing enterprise, engaged in a pattern of racketeering activity by:

i. Orchestrating fraudulent payment arrangements designed to induce unwarranted payments while planning repossession or further collections.

ii. Fabricating, reversing, and manipulating large debits and ledger

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

entries to artificially inflate account balances and trigger default.

iii. Extorting unauthorized payments under threat of repossession, negative credit reporting, and continued harassment via phone, mail, and electronic communications.

iv. Using the mail and wires to further this fraudulent scheme across state lines, impacting hundreds of consumers in Illinois and beyond.

122.     Plaintiff and class members have been injured in their property, finances, and credit as a direct and proximate result of Defendant's RICO violations.

123.     Supporting Case Law:

- *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010)
- *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992)
- *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)

## COUNT VI

## RESCISSION OF UNCONSCIONABLE AUTO FINANCE CONTRACTS

124.     Plaintiff re-alleges all prior paragraphs of this Complaint. Defendant Flagship exercises near-total control over every aspect of Plaintiff's and the class's auto finance contracts, as set forth in the factual allegations above.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

125.     Flagship's standard-form auto loan agreements and servicing practices are
illegally and unfairly advantageous to Defendant, leveraging misleading
statements, fraudulent conduct, and deceptive practices.

126.     These practices include:

a) Unlawful contract provisions that deceive consumers into
believing they have negotiated or bargained for payment
arrangements, interest, or fees, when in reality all terms are
dictated by Flagship on a take-it-or-leave-it basis.

b) Terms requiring borrowers to accept responsibility for
unauthorized debits, false ledger entries, or inflated "interest not
collected" charges, regardless of actual payment status or
contractual obligations.

c) Mandatory requirements for consumers to maintain costly
insurance or pay inflated ancillary charges, often for the benefit of
Flagship or its affiliates, without full disclosure or statutory basis.

d) Threats of repossession and negative credit reporting unless
consumers pay disputed charges or agree to new "forbearance"
arrangements, targeting financially vulnerable Illinois residents.

e) Combination of consumer and commercial provisions in
contracts, obfuscating consumer rights and obligations and failing
to properly disclose material terms.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

127.     These practices are designed to illegally and unfairly benefit Flagship at the expense of Plaintiff and other class members, in clear violation of public policy and consumer protection laws.

128.     Flagship's form auto loan agreements are unconscionable contracts of adhesion, contrary to the public interest, and unenforceable under Illinois law.

129.     As a direct result of these unlawful contract terms, Plaintiff and class members have incurred out-of-pocket expenses (e.g., unauthorized bank fees, inflated loan balances, insurance costs) for which Flagship had no entitlement, unjustly enriching Flagship and causing financial harm.

130.     Plaintiff and the class are entitled to rescission and restitution for all illegally charged sums, and for all wrongful or unauthorized debits and fees.

## COUNT VII

## UNJUST ENRICHMENT

131.     Plaintiff and the class conferred a benefit on Flagship by making loan payments, covering fees, interest, and costs that were not owed, or that Flagship improperly inflated through misconduct.

132.     Flagship knowingly and voluntarily accepted and retained these benefits under circumstances making it inequitable to do so.

133.     Flagship consciously accepted and retained these benefits as a result of their wrongful conduct, as detailed above.

134.     Equity demands that Flagship disgorge all amounts unjustly retained at the expense of Plaintiff and the class.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## COUNT VIII

**DECLARATORY RELIEF**

135.　An actual controversy exists between Plaintiff, the class, and Flagship relating to the following:

> a) Whether Flagship unlawfully imposed fees, debits, and balance increases through contracts of adhesion and unauthorized conduct;
>
> b) Whether Flagship failed to honor payment arrangements and misrepresented account status;
>
> c) Whether Plaintiff and the class are entitled to restitution and/or statutory damages;
>
> d) Whether Flagship's contracts and collection tactics violate state and federal law, including the Dodd-Frank Act and Illinois UDAP law;
>
> e) Whether Flagship mishandled consumer funds and ledgers by adding unauthorized charges, causing financial hardship.

136.　Plaintiff and the class seek declaratory judgment that Flagship's conduct, contracts, and practices are unlawful, void, and that Plaintiff and the class are entitled to all available remedies.

## COUNT IX

**INJUNCTIVE RELIEF**

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

137.   Unless enjoined, Flagship will continue to enforce illegal contracts of adhesion, initiate unauthorized debits, manipulate loan ledgers, threaten or carry out wrongful repossession, and employ unfair, deceptive, or abusive collection practices.

138.   Plaintiff and the proposed class have been irreparably injured by Flagship's unlawful conduct, including wrongful repossession, financial, emotional, and credit harm.

139.   Plaintiff and the proposed class lack an adequate remedy at law because monetary relief cannot prevent ongoing violations, further injury, or future loss of vehicles, credit, and property.

140.   Flagship has acted and threatens to act on grounds generally applicable to the class, making class-wide injunctive relief appropriate.

141.   The Court should enter an order:

a) Disgorging all fees, interest, and amounts collected in violation of law or contract;

b) Enjoining all future repossessions, collection efforts, and credit reporting based on disputed or fabricated charges;

c) Requiring correction of account ledgers and restitution for all sums unlawfully taken;

d) Requiring reversal of negative credit reporting and public record filings;

e) Awarding all other relief necessary to prevent further violations and harm to Plaintiff and the class.

**PRAYER FOR RELIEF**

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

142.    Certification: Certify the Illinois Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and

23(b)(3); appoint Plaintiff as Class Representative; and appoint qualified Class Counsel

under Rule 23(g).

143.    Damages: Award statutory damages, actual damages, treble damages where

authorized, and punitive damages to Plaintiff and the Class under TILA, FDCPA, EFTA,

FCRA, TCPA, ICFA, UDAP, RICO, and other applicable law.

144.    Restitution/Disgorgement: Order restitution and disgorgement of all sums unlawfully

collected, including phantom charges, unauthorized debits, inflated "interest not

collected" fees, and non-amortizing add-ons.

145.    Injunctive and Declaratory Relief:

a) Enjoin Flagship and its agents from assessing phantom or

unauthorized charges,

b) Enjoin all repossessions and negative credit reporting based on such

charges or misrepresentations,

c) Require Flagship to provide corrected loan accountings, correct

Plaintiff's and class members' credit reports, and implement policies

to prevent future violations.

146.    Temporary Restraining Order/Preliminary Injunction: Issue immediate injunctive

relief halting all repossessions and negative credit reporting based on disputed or

phantom charges during the pendency of this action.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

147.    Attorneys' Fees and Costs: Award reasonable attorneys' fees and costs as allowed by

the relevant consumer statutes and equity.

148.    Further Relief: Grant such other and further relief as the Court deems just and proper,

including all remedies necessary to make Plaintiff and the Class whole and to deter future

misconduct.

Respectfully submitted,

/s/ Nina Watts

Pro Se Plaintiff

2002 S. Hamilton Street

Lockport, Illinois 60441

(815) 980-6061

ninawatts2@att.net

## CERTIFICATE OF SERVICE

I, Nina Watts, hereby certify that on this __12__ day of __December__, 202_5_, I caused a true and correct copy of the foregoing Complaint, including any attachments, to be served upon the following parties by depositing the same in the United States Mail, first-class postage prepaid, addressed as follows:

Flagship Credit Acceptance LLC

c/o Registered Agent: CT Corporation System

 2626 Glenwood Avenue, Suite 550,

 Raleigh, NC 27608.


Perella Weinberg Partners Capital Management LP

c/o Registered Agent: Corporation Service Company

251 Little Falls Drive

Wilmington, DE 19808


Peter A. Weinberg (registered agent address: 251 Little Falls Drive Wilmington, DE 19808)

Joseph R. Perella (registered agent address: 251 Little Falls Drive

Wilmington, DE 19808)

I certify under penalty of perjury that the foregoing is true and correct.


Respectfully submitted,

_Nina Watts_

Nina Watts, Pro Se Plaintiff

2002 S Hamiliton Street

Lockport, Illinois 60441

(815) 980-6061

Ninawatts14@att.net